Jean M. Lawler (SBN: 91254)
John A. Graniez (SBN 89759)
MURCHISON & CUMMING, LLP
801 S. Grand Avenue, 9th Floor
Los Angeles, CA 90017
Tel: (213) 623-7400
Fax: (213) 623-6336
Email:      jlawler@murchisonlaw.com
            jgraniez@murchisonlaw.com

Attorneys for Plaintiff, STARR
INDEMNITY & LIABILITY COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, P.A.,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT (Equitable Subrogation, Equitable Indemnity and Equitable Contribution)** |

Plaintiff STARR INDEMNITY & LIABILITY COMPANY alleges as follows:

## I.

## SUBJECT MATTER JURISDICTION

1.      This Court has original jurisdiction of this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.

## NATURE OF ACTION

2.     This is a dispute among four liability insurers (primary and excess insurers) regarding their respective obligations for payment of a $4,000,000 settlement that was made on behalf of their mutual insured to resolve an underlying construction defect action.  Plaintiff paid $1,000,000 of the settlement, subject to a reservation of its rights to recover that payment from defendants.  By this action, Plaintiff seeks a declaratory judgment regarding which of the primary policy or policies issued by defendants St. Paul and/or Travelers is or were the legally appropriate primary policies to respond to this loss and to make payment toward the $4,000,000 settlement amount, subject to exhaustion of said policy or policies.

3.     In particular, Plaintiff is informed and believes that either or both the St. Paul and one or more Travelers primary policies are the appropriate primary policies under which the settlement in the Underlying Action should have been funded, rather than different Travelers primary policies to which Travelers in fact allocated the payment.

4.     Plaintiff further seeks a declaration that its excess policy is and was not triggered for purposes of this loss because the primary Travelers policy underlying Plaintiff's excess policy was not properly, and should not have been, exhausted, such that Plaintiff is entitled to full reimbursement from one or more of the defendant insurers in the amount of the
$1,000,000 it paid toward the settlement of the Underlying Action, on claims for equitable subrogation, equitable indemnity and/or equitable contribution, depending on which policy or policies the court finds to be the appropriate primary policy or policies applicable to this loss.

## THE PARTIES

5.     Plaintiff STARR INDEMNITY & LIABILITY COMPANY ("STARR") is, and at all relevant times was, a corporation, duly authorized and existing under the laws of the State of Texas, with its principal place of business located in the State of New

COMPLAINT FOR DECLARATORY JUDGMENT; EQUITABLE SUBROGATION; EQUITABLE INDEMNITY; EQUITABLE CONTRIBUTION

1  York.  STARR is, and at all relevant times was, authorized to conduct the business of

2  insurance in the State of California.

3      6.      Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF

4  AMERICA ("TRAVELERS") is, and at all relevant times was, a corporation, duly

5  authorized and existing under the laws of the State of Connecticut, with its principal

6  place of business located in the State of Connecticut.  TRAVELERS is, and at all

7  relevant times was, authorized to conduct the business of insurance in the State of

8  California.

9      7.      STARR is informed and believes and on that basis alleges that Defendant

10 ST. PAUL FIRE AND MARINE INSURANCE COMPANY ("ST. PAUL") is, and at all

11 relevant times was, a corporation, duly authorized and existing under the laws of the

12 State of Minnesota, with its principal place of business located in the State of Minnesota.

13 STARR is informed and believes and on that basis alleges that ST. PAUL is, and at all

14 relevant times was, authorized to conduct the business of insurance in the State of

15 California.  STARR is informed and believes and on that basis alleges that ST. PAUL is,

16 and at all relevant times was, an affiliate of TRAVELERS.

17     8.      Defendant NATIONAL UNION FIRE INSURANCE COMPANY OF

18 PITTSBURGH, PA ("NATIONAL UNION") is, and at all relevant times was, a

19 corporation, duly organized and existing under the laws of the State of Pennsylvania,

20 with its principal place of business located in the State of New York.  NATIONAL

21 UNION is, and at all relevant times was, authorized to conduct the business of insurance

22 in the State of California.

23                        **THE INSURANCE POLICIES**

24     9.      The insurance policies issued by the Parties cover the period from July 1,

25 2004 to July 1, 2012.  The named insured under each policy is Therma Corporation

26 ("Therma").

27 / / /

28 / / /

COMPLAINT FOR DECLARATORY JUDGMENT; EQUITABLE SUBROGATION; EQUITABLE
INDEMNITY; EQUITABLE CONTRIBUTION

### The St. Paul Primary Policy

10.     ST. PAUL issued Commercial General Liability Policy No. KK03300009 to Therma for the period from July 1, 2004 to July 1, 2005 (the "ST. PAUL POLICY"). Subject to all its terms and conditions, the ST. PAUL POLICY provided primary liability insurance coverage to Therma.   The ST. PAUL POLICY was written in part on Form 47175, which provides in pertinent part as follows:

CONTRACTORS   COMMERCIAL   GENERAL   LIABILITY PROTECTION FORM

What This Agreement Covers

Bodily injury and property damage liability

We'll pay amounts any protected person is legally required to pay as damages for        covered bodily injury or property damage that:

• happens while this agreement is in effect; and

• is caused by an event.

*Property damage* means:

• physical damage to tangible property of others, including all resulting loss of use of that property; or

• loss of use of tangible property of others that isn't physically damaged.

*Event* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

11.     The following endorsement written on Form G0436 modified the ST. PAUL POLICY:

How Coverage Is Changed

There are three changes that are explained below.  These changes limit coverage.

1.     The following replaces the first paragraph of the Bodily injury and property damage liability section in the What This Agreement Covers section.

COMPLAINT FOR DECLARATORY JUDGMENT; EQUITABLE SUBROGATION; EQUITABLE INDEMNITY; EQUITABLE CONTRIBUTION

Bodily injury and property damage liability.  We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:

- happens while this agreement is in effect;

- is caused by an event;

- and is not covered by any liability insurance policy that was issued to you by us, or any of our affiliated insurance companies, at any time prior to this agreement.

                    *       *       *

*First manifested* means first known, or first in a condition where it reasonably should have been known, by:

- your or any of your described authorized persons, for purposes of determining coverage under this agreement for you and the persons and organizations described in the Individual, Partnership or joint venture, Limited liability company, Corporation or other organization, and Employees and volunteer workers sections; or

- you, any of your described authorized persons, or any other described authorized person, for purposes of determining coverage under this agreement for any protected person, including any additional protected person, other than you and the persons and organizations described in the Individual, Partnership or joint venture, Limited liability company, Corporation or other organization, and Employees and volunteer workers sections.

                    *       *       *

3.      The following is added to the definition of property damage in the Bodily injury and property damage liability section of the What This Agreement Covers section.

We'll consider all physical damage to tangible property of others to happen at the time that it is first manifested.  Any continuation, change, or resumption of physical damage to tangible property of others will be considered to be first manifested at the time that the physical damage to tangible property of others from which it continues, changes or resumes was first manifested.

However, we won't consider all physical damage to tangible property of others to happen at the time that it is first manifested if, under the law that applies, it would otherwise not be considered to happen while this agreement is in effect.  Instead, we'll consider all such physical damage to tangible property of others to happen when it would otherwise be considered to happen under such law.

/ / /

COMPLAINT FOR DECLARATORY JUDGMENT; EQUITABLE SUBROGATION; EQUITABLE INDEMNITY; EQUITABLE CONTRIBUTION

1

**The TRAVELERS Primary Policies**

2

12.    TRAVELERS issued seven Commercial General Liability Policies to

3

Therma for consecutive annual periods from July 1, 2005 to July 1, 2012:   Policy

4

No. VTC2J-CO-8300B436 TIL 05 (July 1, 2005 – July 1, 2006); VTC2J-CO-8300B436

5

TIL 06 (July 1, 2006 – July 1, 2007); VTC2J-CO-8300B436 TIL 07 (July 1, 2007 –

6

July 1, 2008);  VTC2J-CO-8300B436 TIL 08 (July 1, 2008 – July 1, 2009);

7

VTC2J-CO-8300B436 TIL 09 (July 1, 2009 – July 1, 2010); VTC2J-CO-8300B436 TIL

8

10 (July 1, 2010 – July 1, 2011); and Policy No. VTC2J-CO-8300B436 TIL 11 (July 1,

9

2011 – July 1, 2012) (the "TRAVELERS POLICIES").  The TRAVELERS POLICIES

10

all have limits of $1,000,000 per occurrence, $2,000,000 general aggregate, and

11

$2,000,000 products-completed operations aggregate.

12

13.    The TRAVELERS POLICIES are written in part on Commercial General

13

Liability Form CG 00 01 10 01, which contains the following pertinent language:

14

SECTION I – COVERAGES

15

COVERAGE   A   BODILY   INJURY   AND
PROPERTY DAMAGE LIABILITY

16

17

1. Insuring Agreement

18

a.     We will pay those sums that the insured
becomes legally obligated to pay as damages
because of "bodily injury" or "property damage"

19

to which this insurance applies.  We will have
the right and duty to defend the insured against

20

any "suit" seeking those damages. …

21

b.     This insurance applies to "bodily injury"
and "property damage" only if:…

22

(2) The "bodily injury" or "property damage"

23

occurs during the policy period; and

24

(3) Prior to the policy period, no insured listed
under Paragraph **1.** Section **II** – Who Is An

25

Insured and no "employee" authorized by you to
give or receive notice of an "occurrence" or

26

claim, knew that the "bodily injury" or "property
damage" had occurred, in whole or in part.  If

27

such a listed insured or authorized "employee"
knew, prior to the policy period, that the "bodily

28

injury" or "property damage" occurred, then any

6

continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the policy period.

SECTION III – LIMITS OF INSURANCE

\*          \*          \*

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

SECTION V - DEFINITIONS

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17.    "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

14.    The TRAVELERS POLICIES contain the following endorsement written on Form CG D2 03 12 97 and entitled AMENDMENT – NON-CUMULATION OF EACH OCCURRENCE LIMIT OF LIABILITY and NON-CUMULATION OF PERSONAL AND ADVERTISING INJURY LIMIT, which provides, in relevant part, as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

7

1. Paragraph 5 of SECTION III – LIMITS OF INSURANCE, is amended to include the following:

Non Cumulation of Each Occurrence Limit – If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited.  This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the policies because of such "occurrence"…

## The NATIONAL UNION Umbrella Policies

15.     NATIONAL UNION issued six Commercial Umbrella Liability Policies to Therma for consecutive annual periods from July 1, 2004 to July 1, 2010:  Policy No. (unknown) (July 1, 2004 – July 1, 2005); Policy No. 4953305 (July 1, 2005 – July 1, 2006); Policy No. BE6564011 (July 1, 2006 – July 1, 2007); Policy No. BE5685792 (July 1, 2007 – July 1, 2008); Policy No. BE2858866 (July 1, 2008 – July 1, 2009) and Policy No. BE44197970 (July 1, 2009 – July 1, 2010) (the "NATIONAL UNION POLICIES").  The NATIONAL UNION POLICIES each provided excess coverage to Therma with limits of $25,000,000 per occurrence, $25,000,000 general aggregate and $25,000,000 products-completed operations aggregate, upon exhaustion of the applicable underlying primary insurance policy, i.e. the ST. PAUL POLICY and the TRAVELERS POLICIES, as per their respective terms and conditions.

16.     The NATIONAL UNION POLICIES are written in part on Excess Umbrella Form 80517 (05/06), which contains the following pertinent language:

I.   INSURING   AGREEMENT   -   COMMERCIAL   UMBRELLA LIABILITY

A.   We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury, Property Damage or Personal Injury and Advertising Injury to which this insurance applies or because of Bodily Injury or Property Damage to which this insurance applies assumed by the Insured under an Insured Contract.

C. 1. This policy applies to Bodily Injury or Property Damage, only if prior to the Policy Period, no Insured listed under subparagraphs 2a., 2b., 2c. or 2 e. of Paragraph M of Section VII, no executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. and no employee authorized by you to give or receive notice of an Occurrence, claim or suit, knew that the Bodily Injury or Property Damage had occurred, in whole or in part. If such an Insured or authorized employee knew, prior to the Policy Period, that the Bodily Injury or Property Damage had occurred, then any continuation, change or resumption of such Bodily Injury or Property Damage during or after the Policy Period will be deemed to have been known prior to the Policy Period.

IV.    LIMITS OF INSURANCE

F.    This policy applies only in excess of the Retained Limit. If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1. greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

2. less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G.    If the total applicable limits of Scheduled Underlying Insurance are reduced or exhausted by the payment of Loss to which this policy applies and the total applicable limits of applicable Other Insurance are reduced or exhausted, we will:

1. in the event of reduction, pay excess of the remaining total applicable limits of Scheduled Underlying Insurance and any applicable Other Insurance; and

2. in the event of exhaustion, continue in force as underlying insurance.

M.    We will not make any payment under this policy unless and until:

1. the total applicable limits of Scheduled Underlying Insurance have been exhausted by the payment of Loss to which this policy applies and any applicable, Other Insurance have been exhausted by the payment of Loss; or

2. the total applicable Self-Insured Retention and has been satisfied by the payment of Loss to which this policy applies.

When the amount of Loss has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the Insured the amount of such Loss falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

/ / /

/ / /

COMPLAINT FOR DECLARATORY JUDGMENT; EQUITABLE SUBROGATION; EQUITABLE INDEMNITY; EQUITABLE CONTRIBUTION

## VII.   DEFINITIONS

P.     Loss means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a Suit or to investigate a claim reduce the applicable limits of Scheduled Underlying Insurance, then Loss shall include such expenses.

Y.     Property Damage means:

1.     physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at that the time of the physical injury that caused it; or

2.     loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.  …

Z.     Retained Limit means:

1.     the total applicable limits of Scheduled Underlying Insurance and any applicable Other Insurance providing coverage to the Insured; or

2.     the Self-Insured Retention applicable to each Occurrence that results in damages not covered by Scheduled Underlying Insurance nor any applicable Other Insurance providing coverage to the Insured.

17.     The NATIONAL UNION POLICIES include the following endorsement written on Form 83126 (10/03) and entitled "Continuing or Progressively Deteriorating Damages Endorsement", which contains the following pertinent language:

Section VII. DEFINITIONS, S. Occurrence, Paragraph 1 is deleted in its entirety and replaced with the following:

1.     as respects Bodily Injury or Property Damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the Insured.

In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one Occurrence and shall be deemed to occur only when such damage first commenced.

### The STARR Excess Policy

18.     STARR issued one Excess Liability Policy to Therma, Policy No. SISCCCL0152511, for the period from July 1, 2011 to July 1, 2012, with limits of $15,000,000 per occurrence, $15,000,000 general aggregate and $15,000,000 products –

completed operations aggregate ("the STARR POLICY"). Subject to all its terms and conditions, the STARR POLICY provided excess liability insurance to Therma.

19. The STARR POLICY is written in part on Excess Liability Policy Form XS-100 (10/08), which contains the following pertinent language:

SECTION 1. COVERAGE

A. We will pay on behalf of the Insured, the "Ultimate Net Loss" in excess of the "Underlying Insurance" as shown in ITEM 5. of the Declarations, that the Insured becomes legally obligated to pay for loss or damage to which this insurance applies and that takes place in the Coverage Territory. Except for the terms, definitions, conditions and exclusions of this Policy, the coverage provided by this Policy shall follow the terms, definitions, conditions and exclusions of the applicable First Underlying Insurance Policy(ies) shown in ITEM 5.A. of the Declarations."

B. Regardless of any other warranties, terms, conditions, exclusions or limitations of this Policy, if any applicable Underlying Insurance Policy(ies) does not cover "Ultimate Net Loss" for reasons other than exhaustion of its limits of liability by payment of claims or suits, then this Policy will not cover such "Ultimate Net Loss".

C. The amount we will pay for the "Ultimate Net Loss" is limited as described in SECTION II. LIMITS OF INSURANCE.

SECTION II. LIMITS OF INSURANCE

A. The Limits of Insurance shown in the Declarations and the rules below describe the most we will pay regardless of the number of:

1. Insureds;

2. Claims made or suits brought; or

3. Persons or organizations making claims or bringing suits.

B. The Limits of Insurance of this Policy will apply as follows:

1. This Policy applies only in excess of the "Underlying Insurance" scheduled in ITEM 5 of the Declarations;

2. If our Limits of Insurance stated in ITEM 4 of the Declarations are less than the total Limits of Insurance stated in ITEM 4 of the Declarations, then our Limits of Insurance shall be that proportion of the "Ultimate Net Loss" to which our Limits of Insurance apply to the total Limits of Insurance stated in ITEM 4 of the Declarations and apply only in excess of the total Limits of "Underlying Insurance" scheduled in ITEM 5 of the Declarations.

3. Subject to Paragraph B.2. above, the Each Occurrence Limit stated in ITEM 4.A. of the Declarations is the most we will pay for the "Ultimate

Net Loss" for loss or damages arising out of any one occurrence to which this insurance applies.

4.     Subject to Paragraph B.2. and B.3. above, the limits stated in ITEM 4.C of the Declarations for the Products-Completed Operations Aggregate is the most we will pay for all "Ultimate Net Loss" under the Products-Completed Operations Hazard. …

SECTION III. DEFINITIONS

A. "Ultimate Net Loss"

"Ultimate Net Loss" means the total sum after reduction of all recoveries, including other valid and collectible insurance, excepting only the "Underlying Insurance" scheduled under ITEM 5 of the Declarations, actually paid or payable due to a claim or suit for which you or an insured are liable either by a settlement to which we agreed or a final judgment.

The term "Ultimate Net Loss" shall also include defense costs when such defense costs are included within the limits of insurance of any applicable "Underlying Insurance".

B. "Underlying Insurance"

"Underlying Insurance" means the Policy(ies) and/or self-insured retention identified in ITEM 5 of the Declarations. "Underlying Insurance" shall include:

1.     The First Underlying Insurance Policy(ies) scheduled in ITEM 5.A.  of the Declarations;

2.     Any additional Underlying Insurance Policy(ies) scheduled in ITEM 5.B. of the Declarations; and

3.     Any renewal or replacement of such Policy(ies).

20.     The "Underlying Insurance" identified in Item 5 of the Declarations of the STARR POLICY is TRAVELERS Commercial General Liability Policy No. VTC2J-CO-8300B436 TIL-11 (July 1, 2011 – July 1, 2012).

21.     The STARR Policy contains the following "Other Insurance" clause:

Section IV. - Conditions

I. Other Insurance

If other insurance applies to "Ultimate Net Loss" that is also covered by the Policy, the Policy will apply excess of, and will not contribute to, the other insurance. Nothing herein will be construed to make the STARR Policy subject to the terms, conditions and limitations of such other insurance…

COMPLAINT FOR DECLARATORY JUDGMENT; EQUITABLE SUBROGATION; EQUITABLE INDEMNITY; EQUITABLE CONTRIBUTION

## THE UNDERLYING ACTION AND SETTLEMENT

22.     On or about June 27, 2012, a lawsuit entitled *The Regents of the University of California v. Devcon Construction, Inc.*, Case No. CV174499 was filed in Superior Court of the State of California for the County of Santa Cruz ("the Underlying Action"). In the Underlying Action, the Plaintiff Regents sought damages against Defendant Devcon arising out of its activities as the general contractor for the construction of several student housing apartment buildings on the University of Santa Cruz campus, including work on bathroom showers and baths, the HVAC system and other work done by Therma.  The Regents alleged that the defects and damages were first discovered in the Spring of 2011.  STARR is informed and believes and on that basis alleges that the Regents claimed to have suffered damages in excess of $30,000,000.

23.     On or about July 27, 2012 Devcon filed a cross-complaint against its many subcontractors, including Therma.  In its cross-complaint, Devcon alleged that Therma's work was negligently performed and that Therma was responsible to indemnify Devcon for any damages it would owe to Plaintiff by reason of defective construction in connection with the bathroom showers, tubs in the ADA bathrooms, the heating, ventilation and air conditioning ("HVAC") systems and other work.

24.     Therma tendered its defense to TRAVELERS under the ST. PAUL POLICY and TRAVELERS POLICIES.  On or about August 17, 2012, TRAVELERS agreed to defend Therma in the Underlying Action under a reservation of rights.

25.     TRAVELERS asserted that there was only one "occurrence" limit available under its policies, for payment toward any settlement.  On or about February 21, 2014, Therma made an "*Armstrong* election"[1], designating TRAVELERS Policy No. VTC2J-C0-8300B436TIL-11, which was issued for the period from July 1, 2011 to July 1, 2012

---

[1] Under Armstrong World Industries v. Aetna Casualty (1996) 45 Cal.App. 4th 1, where there is an indivisible injury and a common cause, an insured may pick one policy to respond to the loss, which is referred to as an "*Armstrong* election".

as the "designated policy".  STARR is informed and believes, and on that basis alleges, that Therma's "Armstrong election" was made at the request of TRAVELERS and was solely for the purpose of determining how much Therma would pay for a deductible or self-insured retention under a defending primary policy and the 2011 TRAVELERS policy provided only for a $25,000 deductible amount, the least of any of the TRAVELERS POLICIES.  STARR is informed and believes and on that basis alleges that TRAVELERS thereafter defended Therma under its 2011 policy and considered the 2011 policy the applicable policy for payment of a $1 million per occurrence policy limit.

26.    STARR is informed and believes and on that basis alleges that, thereafter, TRAVELERS reconsidered its one "occurrence" position and determined that it would consider the HVAC issues, which arose out of work different than the work related to the showers, to be allegations of a second "occurrence".  STARR is informed and believes that the 2010 – 2011 TRAVELERS policy, the policy immediately preceding the policy under which TRAVELERS was defending, was designated as the second TRAVELERS policy for purposes of the second "occurrence".

27.    In May 2015, the Underlying Action was settled in its entirety on a global basis.  Therma's share of the global settlement amount was $4,000,000.

28.    TRAVELERS paid the first $2,000,000 of Therma's share of the settlement of the Underlying Action, $1,000,000 pursuant to each of its 2010 and 2011 policies, purportedly exhausting each of those policies by said payments, said policies having a $1,000,000 per occurrence limit.  STARR is informed and believes and on that basis alleges that TRAVELERS refused to make payment under, or otherwise acknowledge that any other of its policies applied to the Underlying Action, asserting among other things the Non-Cumulation Endorsements in its various policies.  Coverage under the ST. PAUL POLICY had previously been denied.

29.    STARR is informed and believes and on that basis alleges that in particular, TRAVELERS allocated $1,000,000 of its $2,000,000 settlement payment on behalf of

Therma to TRAVELERS Policy No. VTC2J-CO-8300B436 TIL10 (July 1, 2010 - July 1, 2011) and the other $1,000,000 of its payment to TRAVELERS Policy No. VTC2J-CO-8300B436 TIL 11 (July 1, 2011 - July 1, 2012).  STARR is informed and believes and on that basis alleges that TRAVELERS allocation to those two policies was based on its conclusion that there was one "occurrence" under each of those TRAVELERS polices and that, under the terms of the Non-Cumulation Endorsement in all the TRAVELERS policies, as described in Paragraph 14, above, only one TRAVELERS policy is required to pay its $1,000,000 per occurrence limit for each separate "occurrence".

30.     The excess insurers providing coverage over and above the 2010 and 2011 TRAVELERS primary policies each paid $1,000,000 toward the settlement, to fund the additional $2,000,000 needed, under a full and complete reservation of rights to seek a declaration of the court and reimbursement of the amounts so paid.  STARR was the excess insurer that paid $1,000,000 for the 2011 policy year.

## FIRST CLAIM FOR RELIEF

### (For Declaratory Judgment re ST. PAUL POLICY)

31.     STARR re-alleges and incorporates by this reference each and every allegation contained in Paragraphs 1 – 30 above.

32.     An actual, justiciable controversy has arisen and now exists between STARR and ST. PAUL as to whether or not the ST. PAUL policy provided coverage for Therma for the Underlying Action, in that under California law, STARR is informed and believes that the property damage alleged in the Underlying Action would be deemed to have begun on July 22, 2004, the date that the Certificate of Occupancy was issued, which was while the ST. PAUL POLICY was in effect.  Accordingly, STARR believes that this Court could determine that the ST. PAUL POLICY provided coverage to Therma for the damages sought in the Underlying Action and was in fact triggered for purposes of indemnifying Therma for the settlement of the Underlying Action, up to either the per occurrence or aggregate limit of liability provided for in the policy,

depending upon whether the policy is deemed to apply to one or both of the "occurrences" recognized by TRAVELERS.  STARR is informed and believes and on that basis alleges that ST. PAUL disputes STARR's contention and instead would assert that the ST. PAUL POLICY provides no coverage for the damages sought from Therma in the Underlying Action, such that it had no obligation to pay any amount toward the settlement of the Underlying Action, under any theory.

33.   Accordingly, STARR requests declaratory judgment regarding the availability of coverage under the terms and conditions of the ST. PAUL POLICY for the damages sought against Therma in the Underlying Action, including a determination as to whether the policy should have been the appropriate primary policy under which any part of the settlement amount in the Underlying Action should have been paid and, further, if so, whether the amount that should have been paid under the ST. PAUL POLICY would have been $1,000,000 or $2,000,000 (i.e. the per occurrence or aggregate limit).

34.   In the event that it is determined that the St. PAUL POLICY was "triggered" for purposes of indemnifying Therma for the settlement in the Underlying Action, STARR requests that this Court declare that ST. PAUL is responsible for payment of the settlement amount up to its applicable policy limits, until such time as its limits are exhausted, and order such payment in the form of reimbursement to STARR and/or to TRAVELERS under the 2011 primary and/or excess policies, up to the amount paid under such policy or policies toward the settlement of the Underlying Action, together with interest thereon.

35.   In the event that it is determined that the ST. PAUL POLICY should become exhausted by payment to TRAVELERS of the ST. PAUL liability limits, then STARR requests declaratory judgment that with the exhaustion of the ST. PAUL POLICY, NATIONAL UNION as the excess insurer for the 2004 policy period becomes the excess insurer responsible for payment of the excess portion of the settlement payment in the Underlying Action, and order such payment in the form of

COMPLAINT FOR DECLARATORY JUDGMENT; EQUITABLE SUBROGATION; EQUITABLE INDEMNITY; EQUITABLE CONTRIBUTION

reimbursement to STARR, up to the amount paid by STARR toward the settlement of the Underlying Action, together with interest thereon.

36.    STARR requests declaratory relief as to the rights and duties of the various insurers affected by any finding that the ST. PAUL POLICY should have indemnified Therma for the settlement in the Underlying Action, contributing to the settlement payment up to its applicable policy limits, including reallocation of the settlement payment as to all applicable primary policies and the then-applicable excess policies, if any, and an order for reimbursement to STARR of the $1,000,000 it paid toward settlement of the Underlying Action by the defendant insurer to which such share is reallocated. A declaratory judgment to address these issues is necessary and appropriate at this time.

## SECOND CLAIM FOR RELIEF

### (For Declaratory Judgment re TRAVELERS POLICIES)

37.    STARR re-alleges and incorporates by this reference each and every allegation contained in Paragraphs 1 – 35 above.

38.    An actual, justiciable controversy has arisen and now exists between STARR and TRAVELERS regarding which of the TRAVELERS POLICIES should have provided primary coverage and indemnity for the $4,000,000 settlement entered into in the Underlying Action. In particular, STARR alleges that, at the very least, the first and/or second of the primary policies issued by TRAVELERS provided coverage for Therma for the damages sought in the Underlying Action and that TRAVELERS' $2,000,000 settlement payments should have been made under either or both of those policies, if not the first four TRAVELERS POLICIES. STARR is informed and believes that TRAVELERS disputes this contention and instead asserts that while it agrees that there were two "occurrences", it is not obligated to indemnify Therma under one or more of its policies in effect starting with the first TRAVELERS POLICY in effect when property damage was occurring, but rather, is limited to payment under only one policy per "occurrence" by reason of its Non-Cumulation of Each Occurrence Limit of Liability

Endorsement, quoted above, and, further, is limited to payment under only those policies that its insured chose for its "Armstrong Election", which STARR is informed and believes and on that basis alleges was made solely for the purpose of payment of the deductible without regard to coverage available under any other of its policies.

39.     STARR is informed and believes that the property damage alleged in the Underlying Action would be deemed under California law to have begun on July 22, 2004, the date that the Certificate of Occupancy was issued, or at the latest date, the date that the students actually first occupied the newly built apartments and began using the showers and HVAC systems in the fall of 2004, and to continue to occur thereafter.

40.     STARR disputes that the Non-Cumulation of Each Occurrence Limit of Liability Endorsement contained in the TRAVELERS POLICIES is applicable to preclude the 2005 and/or 2006, or later, TRAVELERS POLICIES from being "triggered" for purposes of paying indemnity for the Underlying Action. STARR further disputes that the 2011 TRAVELERS POLICY was properly exhausted.

41.     Accordingly, STARR requests a declaration of this court that the 2011 TRAVELERS POLICY was not properly exhausted, such that STARR had no obligation to pay any amount toward the settlement of the Underlying Action, under any theory.

42.     STARR further requests declaratory judgment regarding the availability of coverage under the terms and conditions of the TRAVELERS POLICIES for the damages sought against Therma in the Underlying Action, including a determination as to the correctness of TRAVELERS' decision to not pay any part of the settlement in the Underlying Action under its 2005, 2006 and later TRAVELERS POLICIES, and whether any part of the settlement amount should have been paid under one or more of those policies and, further, if so, what amounts under which TRAVELERS POLICIES.

43.     In the event that it is determined that the 2011 TRAVELERS POLICY was not "triggered" for purposes of indemnifying Therma for the settlement in the Underlying Action, such that it was improperly exhausted, STARR requests that this Court declare whether TRAVELERS or NATIONAL UNION is obligated to reimburse

STARR for its $1,000,000 payment, together with interest thereon, and under which policy said insurer is obligated to so reimburse STARR.

44.    In the event that it is determined that the ST. PAUL POLICY and/or one or more TRAVELERS POLICIES should be found to have properly paid the settlement of the Underlying Action, in amounts that will not exhaust the 2011 TRAVELERS POLICY, then STARR requests declaratory judgment that NATIONAL UNION, as the excess insurer for the primary policies issued for the 2004 - 2010 policy terms, becomes the excess insurer responsible for payment of the excess portion of the settlement payment in the Underlying Action, and order such payment in the form of reimbursement to STARR, up to the amount paid by STARR toward the settlement of the Underlying Action, together with interest thereon.

45.    STARR requests declaratory relief as to the rights and duties of the various insurers affected by any finding that one or more of TRAVELERS POLICIES in effect from 2005 to 2010 should have indemnified Therma for the settlement in the Underlying Action, contributing to the settlement payment up to their applicable policy limits, including reallocation of the settlement proceeds as to all applicable primary policies and the then-applicable excess policies, if any, and an order for reimbursement to STARR of the $1,000,000 it paid toward settlement of the Underlying Action by the defendant insurer to which such share is reallocated.    A declaratory judgment to address these issues is necessary and appropriate at this time.

## THIRD CLAIM FOR RELIEF

### *(For Declaratory Judgment re the NATIONAL UNION POLICIES)*

46.    STARR re-alleges and incorporates by this reference each and every allegation contained in Paragraphs 1 – 44 above.

47.    An actual, justiciable controversy has arisen and now exists between STARR, on the one hand, and ST. PAUL, TRAVELERS and NATIONAL UNION on the other, regarding whether the primary and umbrella policies issued to Therma between 2004-2010 and under which coverage was denied, provided coverage for the settlement

that was entered into in the Underlying Action and, further, whether or not the 2011 TRAVELERS policy was properly exhausted by reason of TRAVELERS' payment thereunder. STARR contends that if one or more of the primary policies issued to Therma for the 2004-2010 policy periods provided coverage to Therma for the settlement that was entered into in the Underlying Action, then NATIONAL UNION, which provided excess coverage to Therma over and above the primary policies, would be the applicable excess insurer to provide any excess coverage in the event the primary policies did not provide $4,000,000 in primary insurance limits sufficient to fund the settlement in the Underlying Action. In such circumstances, STARR contends that it would have had no obligation to make any payment toward the settlement of the Underlying Action and that NATIONAL UNION would be obligated to fully reimburse STARR up to the amount paid by STARR toward the settlement of the Underlying Action, together with interest thereon.

A declaratory judgment to address these issues is necessary and appropriate at this time.

## FOURTH CLAIM FOR RELIEF

### *(Reimbursement Based on Equitable Subrogation)*

48. STARR re-alleges and incorporates by this reference each and every allegation contained in Paragraphs 1 – 46 above.

49. Therma purchased the STARR policy for its own benefit, not for the benefit of Defendants. By virtue of STARR's payment of $1,000,000 that should have been paid by Defendants and would have otherwise been improperly imposed on Therma, STARR is equitably subrogated to the rights of Therma to recover STARR's $1,000,000 payment from Defendants.

## FIFTH CLAIM FOR RELIEF

### *(Equitable Indemnity)*

50. STARR re-alleges and incorporates by this reference each and every allegation contained in Paragraphs 1 – 48 above.

51.     STARR's $1,000,000 payment to settle the Underlying Action on behalf of Therma should rightly have been paid by Defendants, not STARR.  Therefore, STARR is entitled to be indemnified by Defendants for its payment of the obligation of Defendants.

### SIXTH CLAIM FOR RELIEF

***(Against National Union for Reimbursement Based on Equitable Contribution)***

52.     STARR re-alleges and incorporates by this reference each and every allegation contained in Paragraphs 1 – 50 above.

53.     To the extent that one or more of the ST. PAUL and/or 2005-2010 TRAVELERS POLICIES become exhausted by reason of being found obligated in this action to pay their policy limits toward the $4,000,000 settlement of the Underlying Action, and collectively the primary insurers do not provide coverage for the entirety of the $4,000,000 settlement, such excess exposure should be determined to be paid by NATIONAL UNION and STARR is entitled to full contribution from NATIONAL UNION for its $1,000,000 payment.   Therefore STARR is entitled to be reimbursed by NATIONAL UNION in the amount of $1,000,000, or such other sum as the court may determine.

### PRAYER FOR RELIEF

WHEREFORE, STARR prays for judgment as follows:

1.     For a declaration that the ST. PAUL POLICY provided coverage for Therma in the settlement of the Underlying Action and that ST. PAUL is obligated to pay indemnity under its Policy up to $2,000,000, either its applicable per occurrence or aggregate policy limit;

2.     For a declaration that at least the 2005 TRAVELERS POLICY applies to provide coverage for Therma in the settlement of the Underlying Action and that TRAVELERS is obligated to reallocate to its 2005 policy up to $2,000,000 of the amount it paid in settlement, either the per occurrence or aggregate policy limit of said policy.

COMPLAINT FOR DECLARATORY JUDGMENT; EQUITABLE SUBROGATION; EQUITABLE INDEMNITY; EQUITABLE CONTRIBUTION

3.     For a declaration that the Non-Cumulation Endorsements in the 2006-2010 TRAVELERS POLICIES do not preclude coverage under one or more of those policies for the Underlying Action and that payment toward the settlement of the Underlying Action should be forthcoming from one or more of said policies, up to the applicable per occurrence or aggregate policy limit of said policy.

4.     For a declaration that the 2011 TRAVELERS POLICY was improperly exhausted.

5.     For a declaration that if any part of the $4,000,000 settlement payment in the Underlying Action is not covered by primary insurance, that it is the NATIONAL UNION POLICIES that provide the excess coverage for such amount.

6.     For reimbursement to STARR by ST. PAUL, TRAVELERS and/or NATIONAL UNION of the $1,000,000 that STARR paid toward the funding of the settlement in the Underlying Action, under applicable theories of equitable indemnity, equitable subrogation and/or equitable contribution.

7.     For interest at the legal rate of interest on the $1,000,000 until paid.

8.     For costs of suit and such other relief that the Court deems proper.

DATED: July 29, 2015

**MURCHISON & CUMMING, LLP**

By   */s/ John A. Graniez*
Jean M. Lawler
John A. Graniez
Attorneys for Plaintiff, STARR INDEMNITY
& LIABILITY COMPANY INSURANCE
COMPANY

COMPLAINT FOR DECLARATORY JUDGMENT; EQUITABLE SUBROGATION; EQUITABLE INDEMNITY; EQUITABLE CONTRIBUTION